NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0162n.06

No. 09-2512

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FREDERICK FIELDS,

    Petitioner-Appellant,

v.

THOMAS BIRKETT, Warden

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

FILED

*Feb 08, 2012*

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: SILER and KETHLEDGE, Circuit Judges; ADAMS, District Judge.[*]

KETHLEDGE, Circuit Judge. Frederick Fields went to trial on charges that he paid his friend, Eric Lawson, $250 to kill Fields's mother, Eleanor Jones. A Michigan jury convicted Fields of solicitation to commit murder and of first-degree premeditated murder. He later sought a writ of habeas corpus in federal court, arguing that the admission of two hearsay statements at trial violated his rights under the Confrontation Clause. The district court denied the petition. We affirm.

I.

Lawson and Fields were tried before a single jury. The state introduced Fields's own confession, which explained in great detail the sequence of events surrounding the murder. The government also called Eric Davis, who had been in the jail cell next to Lawson's following

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

Lawson's arrest. Davis testified that Lawson had said he killed Jones for $250. Lawson himself did not testify. Certain of Jones's friends and neighbors also testified to the effect that Fields and Jones had been fighting before the murder. According to some of those witnesses, Jones said that if something happened to her Fields would be responsible. Fields could not cross-examine Jones herself, who was the victim of the charged murder. Fields objected to the admission of both statements on the grounds that their admission would violate his Sixth Amendment right to "be confronted with the witnesses against him." The judge overruled his objections. The jury hung on Lawson's guilt, but convicted Fields.

On direct review, the Michigan Court of Appeals affirmed, holding that the statements were admitted under reliable hearsay exceptions and therefore satisfied the then-governing Confrontation Clause test under Michigan law, which was based upon *Ohio v. Roberts*, 448 U.S. 56 (1980). Then the United States Supreme Court overturned *Roberts*, holding that the Confrontation Clause prohibits the introduction of testimonial statements unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). The Michigan Supreme Court later denied discretionary review.

Fields then moved for relief from judgment in the trial court, arguing that the statements were inadmissible under the new *Crawford* standard. Without addressing the merits of that issue, the court found any potential error harmless. Fields sought leave to appeal, which the Michigan Court of Appeals denied in a one-sentence order stating that Fields's "delayed application for leave to appeal is DENIED for lack of merit in the grounds presented." The Michigan Supreme Court denied review.

Fields thereafter filed his federal habeas petition. The district court denied the petition, reasoning that the statements were not testimonial under *Crawford* and that, even if they were, any error was harmless. The court denied a certificate of appealability, but we granted one with respect to Fields's Confrontation Clause claims.

II.

We review the district court's denial of the writ de novo. *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011). If a state court adjudicates a claim on the merits, we may grant the writ with respect to that claim only if the state court unreasonably determined the facts or its decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). The Supreme Court has recently clarified that "clearly established Federal law" means the law that existed at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 129 S. Ct. 38, 45 (2011). That final merits adjudication is "the last state-court decision to reach the merits of the particular claims being considered." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc).

A.

Here, it is unclear which of three state-court decisions was the final merits adjudication. The state argues that the Michigan Court of Appeals's denial of leave to appeal on collateral review was the final merits adjudication, since "lack of merit in the grounds presented" was the reason stated in its order. Thus, the warden concludes, we should apply *Crawford* and defer to the state-court decision under *Harrington v. Richter*, 131 S. Ct. 770, 784–85 (2011).

Fields thinks that the court of appeals's order does not qualify as the final adjudication because it merely denies leave to appeal, lacks explanation, and is ambiguous as to whether it rejected Fields's claim on the merits. He argues instead that the trial court's decision denying relief from judgment is the final merits adjudication. That court denied his claim on harmless-error grounds without reaching the question whether the various statements were testimonial under *Crawford*. But Fields contends that a decision on those grounds disposes of a claim "on the merits." Thus, in his view, *Crawford* applies, but we should not defer to the state court's decision whether the statements are testimonial, since the court never decided that issue.

A third possibility is the Michigan Court of Appeals's decision on direct review. On the date of that decision, *Roberts* was still governing law. Thus, if that decision is the final adjudication on the merits, we would apply *Roberts* and defer to the state-court decision on that issue.

Which of the three decisions qualifies as the final merits adjudication is a thorny issue. As explained below, however, the issue is also one we need not reach.

B.

Lawson's statement was admissible under either a deferential application of *Roberts* or a de novo application of *Crawford*. We first consider the Michigan Court of Appeals's conclusion that Lawson's statements to Davis were admissible under *Roberts*. The court correctly recited that test: "Where a hearsay statement falls within a firmly rooted hearsay exception, or where the statement bears [ ] adequate indicia of reliability, admission of the hearsay statement does not violate a defendant's right to confrontation." *People v. Fields*, No. 237176, 2003 WL 22681571, at *3 (Mich. Ct. App. 2003).

-4-

Davis testified that Lawson had told him that "his home boy paid him two hundred and fifty dollars to kill his mother." There was also evidence that Lawson trusted Davis: Lawson had Davis use his phone privileges to help Lawson get rid of a gun. The court of appeals held that Lawson's statements possessed sufficient "particularized guarantees of trustworthiness" to be reliable. *Roberts*, 448 U.S. at 66. The court also found that Lawson had confessed voluntarily, without prompting, soon after the crime, to an apparent confidant. In addition, the court found that Lawson's confession did not minimize his role in killing Jones and that he had no motive to lie. These factual determinations were reasonable. *See* 28 U.S.C. § 2254(d)(2). And they reasonably support admission under *Roberts*. *See Jackson v. McKee*, 525 F.3d 430, 438 (6th Cir. 2008).

Lawson's confession was also admissible under *Crawford*. The Confrontation Clause prohibits the introduction of testimonial statements without an opportunity for the defendant to cross-examine the declarant. *See Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713 (2011). "A statement is testimonial if a reasonable person in the declarant's position would have anticipated the use of the statement in a criminal proceeding." *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011).

Fields's argument is that inmates know that their fellow prisoners are potential snitches, so a reasonable person in Lawson's position would have known that his statements would be used against him and his codefendant at trial. But no reasonable detainee would confess to a fellow inmate if the detainee thought that his confession would be used against him at trial. *See, e.g.*, *United States v. Pike*, 292 F. App'x 108, 112 (2d Cir. 2008); *United States v. Johnson*, 192 F. App'x

935, 937–38 (11th Cir. 2006). Lawson's confession was not testimonial, and thus we cannot grant relief on this claim regardless of which state-court decision we review.

C.

That leaves Jones's predictions that Fields might kill her. We need not decide whether the state courts' decisions with respect to Jones's statements were error, because, given the evidence properly introduced at trial, the admission of Jones's statements was harmless in any event.

A federal court may not grant habeas relief unless the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (internal punctuation omitted). Here, the admissible evidence against Fields fell into three categories: Fields's own confession; Lawson's jailhouse confession; and testimony from friends and neighbors that Fields and Jones had been fighting.

Fields's confession virtually doomed his case. Hours after his arrest, Fields requested an interview with the police. During that interview, which was held the next day, Fields said the following: He had been fighting with Jones. He and Lawson planned the murder. Lawson dropped Fields off at a restaurant to give Fields an alibi, while Lawson went to Jones's house and shot her. Lawson had changed shoes after the killing. Then, Fields, Lawson, and other friends socialized before going to Jones's house, where Fields discovered the body. For Lawson's role, Fields gave him $250.

"[T]he defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (citation omitted). Indeed, "a full confession in which the defendant discloses the motive for and means of

the crime" is so powerful that a jury might rely on it alone in convicting. *Id.* Moreover, in this case Fields's confession did not stand alone: the man Fields hired to kill his mother independently confirmed its details. When Lawson confessed, he was not with Fields, and Lawson confessed to a different person, whom he trusted with the information. That both defendants would separately reveal the details of the scheme—including the amount of payment—was powerful evidence of Fields's guilt. He offers no credible explanation as to how each codefendant gave the same confession unless they had actually committed the crime.

But Fields asserts that the jury must not have trusted the confessions, because it hung on Lawson's guilt and convicted Fields. The only explanation, Fields says, is that the jurors who voted to acquit Lawson must have doubted the government's story but believed that Fields was responsible nonetheless. Were it not for Jones's statements, Fields contends, the jury would not have convicted him either.

Fields wants us to extrapolate from the verdicts what evidence influenced and did not influence the jurors. We decline to do so here. Juries do not explain their verdicts, and the jury could have acquitted Lawson for any number of reasons unrelated to Fields's guilt. In any event, we think it unlikely that the jury thought that Fields hired someone other than Lawson to kill Jones. No evidence suggested such a story. Much more likely, the jury (or at least one juror) had its own reasons for being more lenient towards Lawson. We do not think that the verdicts here add much to our harmlessness inquiry, or suggest that we should discount the confessions.

Moreover, Jones's predictions were somewhat cumulative of other evidence at trial. The trial judge instructed the jury to consider them only to show familial discord. We presume that the jury

obeyed that instruction. *See Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007). And there was other, undisputedly admissible testimony that Fields and Jones had fought, sometimes violently. Jones's best friend testified that Jones and Fields would curse at each other and that Jones had threatened to kick Fields out of the house. Jones's cousin testified that Fields had knocked over Jones's Christmas tree and threatened her with a baseball bat. This testimony provided some evidence of Fields's motive to kill his mother. Jones's ultimate conclusion that the discord had reached such an extent that she feared for her life was admittedly more powerful, but it ultimately rested on the same factual basis.

The admission of Jones's predictions did not substantially and injuriously influence the verdict. Fields cannot receive habeas relief on his challenges to either category of statements introduced against him.

The district court's judgment is affirmed.